UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KELVIN KIRK,<br><br>                       Plaintiff,<br>v.<br><br>LT BOVEE, NURSE BRITT, NURSE KRIS DEYOUNG, SGT SCHMIDT, WARDEN MICHAEL MEISNER, and CINDY O'DONNELL<br><br>                       Defendants. | Case No. 23-CV-536-JPS<br><br><br>**ORDER** |

       Plaintiff Kelvin Kirk, an inmate confined at Fox Lake Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. On July 6, 2023, the Court screened Plaintiff's complaint, found that it failed to state a claim, and allowed Plaintiff the opportunity to file an amended complaint. ECF No. 10. This Order screens Plaintiff's amended complaint, ECF No. 12.

**1.    SCREENING THE AMENDED COMPLAINT**

    **1.1    Federal Screening Standard**

       Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

       In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of

Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 1.2 Plaintiff's Allegations

Plaintiff has systemic lupus erythematosus, pulmonary fibrosis, rheumatoid arthritis, high blood pressure, asthma, a history of pleurisy-inflammation of the membranous sacs lining the thoracic cavity and enveloping the lungs, post-traumatic stress disorder, depression, sleep apnea, and anxiety, among other ailments. ECF No. 12 at 4. On November 8, 2020, Plaintiff put in a health service request ("HSR") requesting to be seen for his asthma because it had gotten worse, and his inhaler was not

Page 2 of 11
Case 2:23-cv-00536-JPS    Filed 10/31/23    Page 2 of 11    Document 14

enough. *Id.* Plaintiff had difficulty breathing day and night and his request was an emergency because his immune system was weakened from lupus. *Id.* at 4-5. Plaintiff told staff it was an emergency, but they just said that Plaintiff would be seen when they could. *Id.* at 5. Plaintiff repeated his request daily and received the same response of no treatment. *Id.* at 5. Defendant Kris DeYoung ("DeYoung") was medical triage and had Plaintiff's medical files available to her. *Id.* at 15. DeYoung dismissed Plaintiff as a "no show" without any notice of his appointment and failed to follow procedure of having Plaintiff sign a medical treatment refusal form. On November 10, 2020, Plaintiff was so sick that he could not make it out of his cell to eat so officers had to deliver his meals to his room. *Id.* at 5.

On November 24, 2020, Plaintiff's health deteriorated to the point where he experienced fatigue, chills, headaches, muscle aches sore throat, nausea, diarrhea, breathing problems, vomiting, incontinence, and other issues. *Id.* Plaintiff took frequent trips to the restroom to vomit and defecate. *Id.* At approximately 4:30 p.m., Plaintiff felt dizzy when getting out of bed to use the restroom and he fell and hit his head against the wall. *Id.* Plaintiff made his way back to his bed and Defendant Sgt. Schmidt ("Schmidt"). *Id.* Plaintiff told Schmidt what happened, and Schmidt called the health services unit ("HSU") and requested medical attention. *Id.* Plaintiff was told that the nurse would see him soon. *Id.* at 6. While waiting, Plaintiff went to the restroom to vomit. *Id.* When Plaintiff got back to the room, he lost feeling in his left arm and face, he went numb, and experienced the feeling of pins and needles. *Id.* Plaintiff thought he was having a stroke and his made his way back to the sergeant station to get help, but Sgt. Schmidt was not there. *Id.* The dayroom was locked, and Plaintiff could go no further so he made his way to the floor. *Id.*

While on the floor, Plaintiff called for help, but no one came. *Id.* Plaintiff raised his leg to pass gas but defecated on himself. *Id.* Plaintiff laid on the floor in excruciating pain for almost ten minutes before Schmidt came charging into the room. *Id.* Schmidt yelled, "Get up and stop faking! I saw you walk to the bathroom on camera!" *Id.* Plaintiff responded that he could not breath, was dizzy, his head hurt, and that he thought he was having a stroke and needed help. *Id.* at 6-7. Schmidt continued yelling that Plaintiff was faking, that he could not get help, and that Plaintiff would be sorry if Schmidt had to get a 'white shirt.' *Id.* at 7. Other inmates started laughing at Plaintiff and Schmidt stormed off. *Id.*

Approximately ten minutes later, Defendant Lt. Bovee ("Bovee") storms into the room and yells, "I know you can walk, stop faking!" *Id.* Plaintiff again repeated his symptoms and that he could not breath. *Id.* Bovee responded that Plaintiff could breathe because he was talking and continued to yell. *Id.* Plaintiff began to cry and asked if Bovee was retaliating against him for previously writing an inmate complaint against him. *Id.* Bovee grabbed a chair and said, "Get up you stupid [N-word]!" Bovee slid the chair toward Plaintiff and yanked it out of Plaintiff's hand, causing him pain, after he had grabbed it. *Id.* Plaintiff saw Bovee's feet shuffle and feared that Bovee would kick him. *Id.* Plaintiff covered his head and asked not to be beat. *Id.* Other officers soon arrived, who helped Plaintiff into a wheelchair, cuffed him, and took him to HSU. *Id.* Plaintiff alleges that Schmidt's and Bovee's actions caused him additional pain for making him wait for treatment. *Id.*

Plaintiff saw Defendant RN Britt ("Britt") in HSU and he explained that he was in excruciating pain, explained his symptoms and that he believed he was having a stroke. *Id.* at 8. Britt took his blood pressure

multiple times until it lowered. Britt explained that she believed Plaintiff had COVID and that he would be tested. Britt gave him Sudogest for mucus and salt packets for his sore throat. *Id.* Plaintiff complained of continued pain and lupus complications and asked to see a doctor or supervisor; Britt denied his request. *Id.* Britt failed to take into account that his blood pressure was dangerously high when she took it so it must have been even higher when he had been lying on the floor. Britt old Bovee that Plaintiff could go back to the unit, but Bovee said that he was placing Plaintiff in segregation. *Id.* Plaintiff objected because he had done nothing wrong and warned them that segregation would cause further illness as a result of the poor ventilation and dust. *Id.* Bovee and Britt ignored his pleas. *Id.* Britt ordered further blood pressure check in the weeks to come. *Id.* Plaintiff could not stand on his own for the strip search in segregation, so he had to lean on the wall. *Id.*

Plaintiff was charge with disruptive conduct and lying about an employee; he was found guilty at a contested hearing and given sixty days. *Id.* at 9. Plaintiff's appeal was denied by Defendant Warden Meisner ("Meisner"). Plaintiff filed a complaint and appeal regarding this incident, but Meisner and Defendant Cindy O'Donnell denied his complaint and appeal. *Id.*

Two days after Plaintiff's placement in segregation, his condition deteriorated and Plaintiff wrote to HSU on November 26, 2020, detailing his condition. *Id.* A nurse saw him that day for his breathing problems. *Id.* On December 1, 2020, Plaintiff tested positive for COVID, and he was so sick that he could not eat. *Id.* Plaintiff was placed on a liquid diet, but no other treatment was given and he almost died. *Id.* Plaintiff's condition continued to deteriorate, and he saw a pulmonologist. *Id.* Plaintiff believes

Page 5 of 11
Case 2:23-cv-00536-JPS   Filed 10/31/23   Page 5 of 11   Document 14

Bovee's actions were retaliation for complaint FLCI-2020-1843 that Plaintiff had filed about Bovee.

### 1.3 Analysis

First, the Court finds that Plaintiff may proceed against Schmidt, Bovee, DeYoung, and Britt on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's medical need. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)).

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). At the screening stage, the Court finds that Plaintiff's allegations are sufficient to proceed against Schmidt, Bovee, and Britt. Plaintiff alleges serious medical issues, that he was unable to breathe and potentially having a stroke, among other things, and that Defendants failed

to timely provide him adequate treatment. The Court recognizes that Schmidt and Bovee are not themselves medical professionals, however, their alleged delay in getting medical assistance and instead treating Plaintiff as though he was faking during a real medical emergency may constitute deliberate indifference. As such, Plaintiff may proceed against Schmidt, Bovee, DeYoung and Britt on an Eighth Amendment claim for their deliberate indifference to Plaintiff's serious medical need.

Second, the Court finds that Plaintiff may proceed on a First Amendment retaliation claim against Bovee. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that Bovee retaliated against him for filing an inmate grievance. It is well established that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the second element, Plaintiff alleges suffering deprivations—being denied medical attention, being placed in segregation, and receiving a conduct report—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (prison transfer likely to deter. At the pleadings stage, the Court therefore finds these allegations sufficient to state a First Amendment retaliation claim against Bovee.

Finally, Plaintiff may not proceed against Defendants Meisner or O'Donnell. For a prison official to be personally liable, he or she must have

participated in some way with the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks and citation omitted); *see also Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). As to Meisner and O'Donnell, Plaintiff fails to state a claim against them for their actions in relation to his inmate grievances. Generally, the denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 13, 2013) (quoting *Gevas v. Mitchell,* 492 Fed. Appx. 654, 660 (7th Cir. 2012)). As such, the Court will dismiss Meisner and O'Donnell from this action for the failure to state a claim against them.

**2. CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment claim against Schmidt, Bovee, DeYoung, and Britt for their deliberate indifference to Plaintiff's serious medical need.

**Claim Two:** First Amendment retaliation claim against Bovee.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises

all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Defendants Meisner and O'Donnell be and the same are hereby **DISMISSED** from this action for the failure to state a claim against them;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Schmidt, Bovee, DeYoung, and Britt**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v.*

*Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202
>
> **<u>DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS</u>**. If mail is received directly to the Court's chambers, **<u>IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE</u>**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **<u>IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE</u>**.

Page 11 of 11
Case 2:23-cv-00536-JPS    Filed 10/31/23    Page 11 of 11    Document 14